## BENNOCK *vs.* WHIPPLE.

An unconditional conveyance of land from A. to B., with an obligation back, to reconvey on the payment of certain notes as they fell due, must be of even date, and parts of one transaction, to constitute a mortgage.

*Parol* testimony that the grantee agreed that the grantor should retain possession of the land, if he continued to pay at the times specified, was held to be inadmissible, as it had the effect to interpose a new condition not found in the bond.

Lessee for a year, holding over, becomes tenant at will merely, and this tenancy may be determined by his doing anything inconsistent with his tenure — as by receiving a deed from a stranger and causing it to be placed upon the record.

In a writ of entry the tenant cannot set up any special right to the occupancy or possession of the demanded premises, under the plea of *nul disseizin ;* it being necessary in all cases, under the statute, to file a brief statement, where a special plea was formerly required.

THIS was a writ of entry, in which the demandant counted upon his own seizin within twenty years, and a disseizin done by

the defendant, and was tried upon the general issue by *Emery J. October* term, 1834.

The plaintiff, to prove his title, read a deed from *John Barker* and *Stephen S. Crosby*, to *Joseph H. Read* and *Abraham Read*, dated *Oct.* 20*th*, 1819 ; and a mortgage from the two latter, back to *Barker* and *Crosby*, of the same date, to secure the payment of $350. Also an assignment of the mortgage from *Barker* and *Crosby* to *Edward Tuckerman*, dated *Dec.* 31, 1830, and an assignment from *Tuckerman* to *John Barker*, dated *Nov.* 8, 1832 ; and a deed of release and quitclaim from *Barker* to the plaintiff, dated *April* 29, 1834. Also a deed from *Joseph H.* and *Abraham Read* to the plaintiff, dated *Oct.* 18, 1831. And it was admitted that *Tuckerman* entered to foreclose the mortgage, prior to his assignment to *Barker.*

The defendant gave in evidence a lease from *John Barker* to the defendant, dated *May* 1, 1833, to hold for one year. Also a bond from the plaintiff to *Abraham Read*, dated *May* 7, 1833, conditioned to convey the demanded premises to *Mercy Read*, wife of the said *Abraham*, on payment by him of four notes of hand, payable in one, two, three and four years, and an assignment of said bond by said *Abraham* and wife to the defendant, with a power of attorney to him, authorising him to pay said notes and to demand a deed of the plaintiff, dated *February* 6, 1834. Also a deed of the premises from *Abraham Read* and wife, to the tenant, dated *March* 31, 1834.

The tenant then called *Abraham Read*, to prove that the design and purpose of giving said deed by the *Reads*, to the plaintiff, of their right in equity of redemption, was to secure the plaintiff for paying the debt due to said *John Barker*, secured by said mortgage. That it was agreed, at the time of the giving of said deed by the *Reads* to the plaintiff, that the latter should give the bond, which he afterwards did give and which is mentioned above. That the reason why the bond was not given at the time of giving the deed, was, that it was not known how much was due on *Read's* notes to *Barker*, but that it was agreed, when that should be ascertained by the plaintiff, he should give the bond aforesaid. The tenant also offered to prove by oral testimony, that it was agreed by the plaintiff, at the time of giving

the bond, that *Abraham Read* should continue in possession until the first of the notes became due, and that if that was paid at the time, he should continue in possession so long as he continued to pay the notes as they fell due. He also offered to prove by *John Read*, that when he applied to the plaintiff to purchase, after *Read's* conveyance to him, that the plaintiff replied that he could not sell it to him, for that *Abraham Read* had an interest in the land, and that he must have it.

But the presiding Judge rejected all this parol evidence.

The tenant then proved, that he tendered to the plaintiff the amount of the first note on the day it fell due, and exhibited to the plaintiff the assignment of *Read* and wife to him, with the power of attorney.

He also proved, that he had continued to occupy the premises after the expiration of the lease, *May* 1, 1834, as he had before.

The counsel for the defendant contended, that as the tenant held under a lease, which by the terms of it extended to the first day of *May*, 1834, and had continued to occupy after the expiration of the lease, without objections from the plaintiff, the legal presumption was, that his occupation was with the consent of the plaintiff, and upon the same terms as those prescribed in the lease. That the continued occupancy of the defendant was no disseizin of the plaintiff. That, before the plaintiff could legally commence this action, he should have put an end to the defendant's tenure, by giving him notice to quit, and that the tenant should have a reasonable time after such notice ; and so requested the Judge to instruct the jury. But he declined giving such instructions, and directed a verdict for the plaintiff.

If, in the opinion of the Court, the foregoing ruling was correct, judgment was to be entered upon the verdict ; otherwise the verdict was to be set aside and a new trial granted.

*Abbott*, for the defendant.

Inasmuch as the defendant was in by right, the plaintiff cannot maintain this action without giving notice to quit. 4 *Kent's Com.* 112, 113 ; *Jackson* v. *Salmond*, 4 *Wend.* 327 ; *Rising* v. *Stanard*, 17 *Mass.* 285 ; *Ellis* v. *Paige et al.*, 1 *Pick.* 45 ; *Coffin* v. *Lunt*, 2 *Pick.* 70 ; 4 *Cowen*, 349 ; 11 *Wend.* 616.

2. The parol testimony should have been admitted, whereby the right of the defendant to possession would have been fully established. 9 *Wend.* 227 ; *Richardson* v. *Field*, 6 *Greenl.* 37 ; *Davenport* v. *Mason*, 15 *Mass.* 85 ; 1 *Day's Rep.* 139.

*Kent*, to the point that the tenant's defence could only be shown under a brief statement, cited *Dunbar* v. *Mitchell*, 12 *Mass.* 373 ; *Pray* v. *Pierce*, 7 *Mass.* 381.

WESTON C. J. — The demandant has made out a title to the premises demanded, and judgment is to be rendered in his favor, unless the testimony rejected ought to have been received, and would, in connection with the other facts proved, have sustained the defence. The bond given by the demandant to *Abraham Read*, conditioned to convey the premises to *Mercy*, his wife, and which has been assigned to the tenant, was given nearly two years after the date of the deed from *Joseph H.* and *Abraham Read* to the demandant. That bond was altogether matter of contract, and passed no interest in the land. The demandant did not there-afterwards by our law, hold the land conveyed in fee and in mort-gage. To produce this effect, the bond relied upon by way of defeasance, must have borne even date with the conveyance to the demandant, and both must have been parts of one transaction. *Hale* v. *Jewell & al.* 7 *Greenl.* 435. *French* v. *Sturdivant*, 8 *Greenl.* 246. Nor can parol testimony be received to vary the effect of these instruments. Testimony of the same kind was rejected in the case first cited. The testimony offered, that the demandant agreed that *Read* should retain possession of the land, if he continued to pay at the times specified, may be re-garded as equally objectionable, as it had the effect to interpose a new condition, not to be found in the bond. But if it were ad-missible, not being in writing, it could give to *Read* no higher in-terest than a mere tenancy at will, and if such an interest is as-signable, which may be questioned, no higher interest, under that permission, could pass to the tenant. 1 *Cruise*, 280.

Another ground of defence set up is, the lease from *Barker* to the tenant, and the renewal of it by the demandant by implica-tion. The lease from *Barker* expired by its own limitation, on the first day of *May*, 1834. In the mean time, *Barker's* title

passed to the demandant. The continued possession by the tenant, after the expiration of the lease, he held as a mere tenant at will, according to the opinion of *Wilde J.* in *Ellis* v. *Paige & al.* 1 *Pick.* 43 ; but a tenancy at will, with the privilege of holding through the second year, according to the opinion of *Putnam J.* in a note subjoined to the case of *Coffin* v. *Lunt,* 2 *Pick.* 70. But whether of the one kind or the other, a tenant at will is bound to do nothing inconsistent with his tenure ; and if he does, his tenancy is determined. *Campbell* v. *Procter,* 6 *Greenl.* 12. On the thirty-first of *March,* 1834, the tenant took a deed from *Abraham Read* and wife, conveying to him the demanded premises in fee. Now if *Read* was before tenant at will to the demandant, and if such an interest was assignable by a proper instrument, an attempt to convey in fee would determine the tenancy held by *Read,* and constitute a disseizin of the lessor, at his election. So the continued holding by the tenant, after his lease from *Barker* had expired, must be presumed to have been under his dead from *Read ;* for he caused that deed to be recorded, does by his plea claim to be tenant of the freehold, and offered the deed at the trial as evidence of title. This, certainly, is a course of proceeding, entirely inconsistent with his duty as tenant at will.

We have thus taken a view of the defence upon its merits, aside from any objection, arising from the pleadings. By the plea, the tenant in effect admits that he is tenant of the freehold ; but denies that he has disseised the demandant. The question at issue then is, whether the demandant has a right to be seised of the freehold, which has been very clearly established. If the tenant would have resisted the action, on account of any right to the occupancy or possession, he should formally have set up that interest by an appropriate plea, or as the law now stands, in a brief statement, which is essential, wherever a special plea was before necessary. This the tenant has not done; and we are clearly of opinion, that the testimony rejected had no tendency to maintain the issue on his part.

*Judgment on the verdict.*